# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL MALENSKI,          )
                                      )
            **Plaintiff,**         )
                                        )
**v.**                               )        **Case No. CIV-11-408-SPS**
                                        )
**STANDARD INSURANCE**     )
**COMPANY,**                      )
                                        )
            **Defendant.**     )

## OPINION AND ORDER

This matter comes before the Court on the briefs submitted by the parties for the Court to review on the merits the decision by Defendant to deny Plaintiff's claim for Accidental Death and Dismemberment (AD&D) benefits under an ERISA qualified plan. For the reasons set forth below, the Court finds in favor of Defendant Standard Insurance Company and upholds its decision to deny AD&D benefits.

## I.    Facts

Plaintiff Mike Malenski and Insured Kristi Malenski were married and had two children. Mrs. Malenski was employed by Arvest Bank Group, Inc. as a loan officer and was a participant in an employee welfare benefit plan offered by Arvest (the "Plan") and governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff was the sole beneficiary of Mrs. Malenski's ERISA policies, which included a Basic and Additional Term Life policy and an Accidental Death and Dismemberment (AD&D) policy. This dispute arises under the AD&D policy.

On Friday, June 4, 2010, Mrs. Malenski performed paid community service with Arvest, which consisted of acting as co-chairman of the Relay for Life National Cancer Society. Mrs. Malenski did not participate in the event, but acted as an organizer. On that day, the temperatures reached ninety degrees. Later that night, Mrs. Malenski was admitted at Tahlequah City Hospital where it was noted that she had gotten "too hot [at the] Relay for Life" event. Docket No. 14, STND 11-00843-00341. Medical personnel also noted that Mrs. Malenski was feeling "very dehydrated" and "had been out in the sun, [and] not drinking a whole lot." Docket No. 14, STND 11-00843-00343. The diagnosis at the time of admission was heat exhaustion and gastroenteritis. Docket No. 14, STND 11-00843-00352. By the next morning, Mrs. Malenski went into respiratory arrest, was intubated, and became comatose. Docket No. 14, STND 11-00843-00351-52. Mrs. Malenski was then transferred to St. Francis Hospital in Tulsa, where it was noted that she was "unresponsive to verbal or painful stimuli" and had no gag reflex. Docket No. 14, STND 11-00843-00244. An EEG showed no brain activity, and Mrs. Malenski was pronounced brain dead by the afternoon of June 5, 2010. Docket No. 14, STND 11-00843-00245.

Plaintiff thereafter submitted a Proof of Death Claim Form and Beneficiary Statement to Defendant Standard Insurance Company, the administrator of the Plan, seeking payment of benefits under Mrs. Malenski's ERISA plan. At that time, Standard informed Plaintiff that it was still investigating the claim for Accidental Death & Dismemberment (AD&D) benefits.

The autopsy, performed by Dr. Joshua Lanter, M.D., revealed that Mrs. Malenski's cause of death was due to complications of cerebral edema and herniation due to dehydration and electrolyte abnormalities and acute gastroenteritis complicated by heat exhaustion. Docket No. 14, STND 11-00843-00397. Dr. Lanter wrote that because Mrs. Malenski "began developing symptoms while exposed to outdoor heat on the day of admission to Tahlequah City Hospital[,]", the manner of death was ruled an "accident." Docket No. 14, STND 11-00843-00397-00401.

On December 3, 2010, after Plaintiff sent Standard a certified copy of Mrs. Malenski's death certificate and autopsy report, Standard issued a payment of $166,000 under her Basic Life and Additional Life benefits. Plaintiff was also informed at that time that Standard was still investigating Mrs. Malenski's death under the Accidental Death and Dismemberment (AD&D) policy, and would need medical records from both Tahlequah City Hospital and St. Francis Hospital. Docket No. 14, STND 11-00843-00392.

Following several letters informing Plaintiff that the AD&D claim was still under review, Standard forwarded the claim documents and medical records to Dr. Jeffrey Wishik, M.D., an independent medical consultant, for review. Docket No. 14, STND 11-00843-00160. Dr. Wishik prepared a report dated February 22, 2011 offering his opinion on Mrs. Malenski's cause of death based on a review of Mrs. Malenski's death certificate, medical records from both Tahlequah City Hospital and St. Francis Hospital, and the autopsy report. Docket No. 14, STND 11-00843-00153. Dr. Wishik documented the information found in the medical records and used that information to respond to

specific questions posed by Standard.  Docket No. 14, STND 11-00843-00153-55.  In response to those questions, Dr. Wishik wrote that Mrs. Malenski's gastroenteritis constituted an existing sickness that contributed to her accidental death, as "[s]he was probably already dehydrated when she was at the Relay for life event."  Docket No. 14, STND 11-00843-00154.  Dr. Wishik further responded that had Mrs. Malenski not been suffering from gastroenteritis, "she would have been able to drink enough fluid to avoid serious dehydration."  Docket No. 14, STND 11-00843-00155.  Standard informed Plaintiff by letter dated February 23, 2011 that it was denying benefits under the AD&D policy.  Docket No. 14, STND 11-00843-00144-147.  In making the denial, Standard cited the following policy language related to the AD&D benefits:

A. Insuring Clause
   If you have an accident, including accidental exposure to adverse conditions, while insured for AD&D Insurance, and the accident results in a Loss, we will pay benefits according to the terms of the Group Policy after we receive Proof Of Loss satisfactory to us.
B. Definition of Loss for AD&D Insurance
   Loss means loss of life, hand, foot, sight, speech, hearing in both ears, thumb and index finger of the same hand and Quadriplegia, Hemiplegia, or Paraplegia which meets all of the following requirements:
1. Is caused solely and directly by an accident.
2. Occurs independently of all other causes.
3. With respect to Loss of life, is evidenced by a certified copy of the death certificate.
E.  AD&D Insurance Exclusions
   No AD&D Insurance benefit is payable if the accident or Loss is caused or contributed to by any of the following:
5. Sickness or Pregnancy existing at the time of the accident.

Docket No. 14, STND 11-00843-0021-22; STND 11-00843-00148-149.  Based on the death certificate, autopsy findings, medical records, and Dr. Wishik's findings, Standard concluded that Mrs. Malenski's death was "caused or contributed to by Sickness existing

at the time of her accident." Docket No. 14, STND 11-00843-00146. At that time, Standard informed Plaintiff that he had a right to appeal the denial and submit additional information. Docket No. 14, STND 11-00843-00147.

Plaintiff's attorney Curtis Parks wrote an appeal letter dated March 21, 2011 in which he argued that Mrs. Malenski's gastroenteritis was not a Sickness as defined in the policy, because it was not of "established or settled character." Docket No. 14, STND 11-00843-00131. Mr. Parks also alleged inconsistencies in the medical records from both Tahlequah City Hospital and St. Francis Hospital, as Mr. Parks alleged that Mrs. Malenski had not been experiencing episodes of increased nausea, vomiting, headache, and diarrhea for seven days prior to her death. Mr. Parks further alleged that those inaccuracies had caused Dr. Wishik's conclusions to be similarly inaccurate. Docket No. 14, STND 11-00843-00131. Plaintiff, however, did not submit any additional medical evidence or documentation.

Upon review, Defendant enlisted a second independent medical examiner, Dr. Bradley Fancher, to offer his opinion regarding Mrs. Malenski's cause of death. Defendant posed the following questions for Dr. Fancher to answer: 1) Do the clinical findings support that Ms. Malenski was severely dehydrated and vomiting just prior to her hospitalization and subsequent death? Does the fact that Ms. Malenski had a normal bowel movement the day before support that she was recovering from a gastroenteritis? Why or why not?; 2) Would you put more weight on the family's history of the week prior to Ms. Malenski's death or Ms. Malenski's statements when admitted?; and 3) What is your opinion regarding the cause of Ms. Malenski's death? Docket No. 14, STND 11-

0843-0094-0094-95.   Dr. Fancher reviewed the medical records and answered the questions put forth by Standard, stating that laboratory reports established that Mrs. Malenski was "severely dehydrated" and "still recovering from the effects of fluid losses for days after a gastroenteritis."   Docket No. 14, STND 11-00843-0095.   Dr. Fancher opined that Mrs. Malenski had died from brain edema cause by hyponatremia, which was ultimately due to dehydration.   Docket No. 14, STND 11-00843-0095.   Dr. Fancher elaborated by stating that the cause of Mrs. Malenski's dehydration was multifactorial, including excessive fluid loss due to heat, vomiting, and diarrhea.   Docket No. 14, STND 11-00843-0095.   Further, Dr. Fancher wrote that it was "more probable than not" that Mrs. Malenski's "antecedent history of diarrhea was likely a significant contributor to [her] death[.]"   Docket No. 14, STND 11-00843-0095.   Based on Dr. Fancher's opinions, Standard denied Plaintiff's appeal on July 19, 2011.   Docket No. 14, STND 11-00843-0080-87.

## II.    Analysis

In the Tenth Circuit, it is well-established that that "[w]here . . . the parties in an ERISA case both moved for summary judgment and stipulated that no trial is necessary, 'summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor.'"   *LaAsmar v. Phelps Dodge Corporation Life, Accidental Death & Dismemberment and Dependent Life Insurance Plan*, 605 F.3d 789, 796 (10th Cir. 2010), *quoting Bard v. Boston Shipping Association*, 471 F.3d 229, 235 (1st Cir. 2006).   Where, as here, the plan gives the plan

administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the Court employs "a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *LaAsmar*, 605 F.3d at 796, *quoting Weber v. GE Group Life Assurance Company*, 541 F.3d 1002, 1010 (10th Cir. 2008). Under the arbitrary and capricious standard, the "'review is limited to determining whether the interpretation of the plan was reasonable and made in good faith.'" *LaAsmar*, 605 F.3d at 796, *quoting Kellogg v. Metropolitan Life Insurance Company*, 549 F.3d 818, 825 (10th Cir 2008). The parties agree that the plan in this case *does* grant discretionary authority to the decision-maker, so the applicable standard in this case is the arbitrary and capricious standard. *See* Docket No. 14, STND 11-00843-00036 ("Except for those functions which the Group Policy specifically reserves to the Policyholder, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.").

The parties also do not dispute that Standard operates under a conflict of interest. "A conflict of interest can arise between a plan administrator's duty to act 'solely in the interest of the participants and beneficiaries' of the plan, 29 U.S.C. § 1104(a)(1), and his self interest or loyalty to his employer." *Kimber v. Thiokol Corporation*, 196 F.3d 1092, 197 (10th Cir. 1999). "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there was an abuse of discretion.'" *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 115 (1989), *quoting* Restatement (Second) of Trusts §

187, Comment *d* (1959). "The standard always remains arbitrary and capricious but the amount of deference present may decrease 'on a sliding scale in proportion to the extent of conflict present, recognizing the arbitrary and capricious standard is inherently flexible.'" *Kimber*, 196 F.3d at 1097, *quoting McGraw v. Prudential Insurance Company*, 137 F.3d 1253, 1258 (10th Cir. 1998).

Although there is a conflict of interest present in this case, Plaintiff argues only that it operates to shift the burden to Defendant of proving the reasonableness of its decision by citing *Fought v. UNUM Life Insurance Company of America*, 379 F.3d 997, 1006 (10th Cir. 2004). But the Tenth Circuit has recognized the abrogation of *Fought* in that the mere presence of a conflict does *not* operate to shift the burden to Standard to prove that that the sickness exclusion was applicable to Plaintiff's claim. *See Holcomb v. Unum Life Insurance of America*, 578 F.3d 1187, 1193 (10th Cir. 2009) ("In prior cases where a plan administrator has operated under a similar conflict, we have shifted the burden to the administrator 'to establish by substantial evidence that the denial of benefits was not arbitrary and capricious.' *Fought*, 379 F.3d at 1005; *see Flinders v. Workforce Stabilization Plan of Phillips Petroleum Company*, 491 F.3d 1180, 1190 (10th Cir. 2007). [The Supreme Court] expressly rejects and therefore abrogates this approach."), *citing Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 116 (2008) (holding it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules focused narrowly upon the evaluator/payor conflict"). Considering the fact that Standard *did* take steps to minimize any potential conflict by enlisting the services of independent medical examiners to offer opinions

regarding Mrs. Malenski's cause of death *and* that Plaintiff has pointed to no further evidence that Standard's conflict of interest in any way affected its decision, the Court finds that the conflict of interest in this case is of little importance. *See Holcomb*, 578 F.3d at 1193 ("A conflict 'should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . '"), *quoting Glenn*, 554 U.S. at 117.

Plaintiff argues that Standard's decision to deny benefits under the AD&D policy was an "arbitrary conclusion" and points specifically to Standard's conclusion that Mrs. Malenski was already dehydrated due to her gastroenteritis at the time of her exposure to outdoor heat. In support of this argument, Plaintiff cites the following: i) the finding that Mrs. Malenski had been suffering from gastroenteritis for seven days prior to the Relay for Life event was inaccurate, and ii) Standard's independent examiner Dr. Fancher did not believe that either Mrs. Malenski's hydration level *or* gastroenteritis was material to her cause of death.

Plaintiff's arguments are unconvincing. First, Defendant's decision "'need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [its] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis.'" *Hancock v. Metropolitan Life Insurance Company*, 590 F.3d 1141, 1155 (10th Cir. 2009), *quoting Finley v. Hewlett-Packard Company Employee Benefits Organization Income Protection*

*Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004). There is no evidence in the administrative record which would tend to support Plaintiff's assertions. Although given an opportunity to submit additional information in connection with his request for review, *see* Docket No. 14, STND 11-00843-00147 ("If you request a review, you will have the right to submit additional information in connection with your claim. For example, if you can provide us with medical documentation that Mrs. Malenski's existing Sickness did not cause or contribute to her death, we will review the claim again."), the Plaintiff failed to do so. The Court is not obliged to venture outside of the administrative record in reviewing Defendant's decision under an arbitrary and capricious standard. *See Hall v. UNUM Life Insurance Company of America*, 300 F.3d 1197, 1203 (10th Cir. 2002) ("[I]n reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the 'administrative record' – the materials compiled by the administrator in the course of making his decision."), *citing Sandoval v. Aetna Life and Casualty Insurance Company*, 967 F.2d 377, 380-81 (10th Cir. 1992); *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991).

Moreover, the administrative record in this case demonstrates that Mrs. Malenski herself reported that she felt very dehydrated and had been out in the sun and not drinking much when she presented at Tahlequah City Hospital's emergency room. Docket No. 14, STND 11-00843-00343. After Mrs. Malenski was transported to Saint Francis, Mrs. Malenski's family told physicians upon her admission that she had been having "episodes

of increasing nausea and vomiting as well as worsening headache and diarrhea for the past 7 days."[1]  Docket No. 14, STND 11-00843-00246.

In addition, the autopsy and *both* independent physician reports support Standard's decision to deny AD&D benefits.  The autopsy findings of Dr. Joshua Lanter were that Mrs. Malenski's exposure to outdoor heat at the Relay for Life event caused symptoms that exacerbated the electrolyte abnormalities caused by Mrs. Malenski's pre-existing gastroenteritis.  Docket No. 14, STND 11-00843-00401.  Independent medical examiner Dr. Jeffrey Wishik's report, which took into consideration the death certificate, medical records from both Tahlequah City Hospital and Saint Francis Hospital, and the autopsy report, concluded that Mrs. Malenski suffered from the sickness of gastroenteritis which contributed to her accidental death.  Docket No. 14, STND 11-0843-00154.  Dr. Wishik further opined that had Mrs. Malenski *not* been afflicted with the underlying sickness of gastroenteritis, she would not have died as "she would have been able to drink enough fluid to avoid serious dehydration."  Docket No. 14, STND 11-0843-00155.

With regard to independent medical examiner Dr. Fancher's follow-up report, Plaintiff argues that Dr. Fancher discounted, omitted, and ultimately found that whether Mrs. Malenski had gastroenteritis or was dehydrated was immaterial to Defendant's decision.  *See*, Docket No. 21-1, Plaintiff's Simultaneous Response Brief, p. 7.  Plaintiff mischaracterizes Dr. Fancher's statements.  Dr. Fancher actually opined that he would

---

[1] Plaintiff asserts that the documentation from St. Francis which states that family members reported that Mrs. Malenski had been experiencing nausea, vomiting, headache, and diarrhea for seven days prior to her admission is disputed by the Plaintiff.  But there is no evidence in the administrative record to support this assertion.  Moreover, the Court tends to find the written recordings of a physician who is disinterested in the outcome of these proceedings and taken at the time of Mrs. Malenski's admission to the hospital to be credible.

not characterize either possible cause of death as an "accidental death." Docket No. 14, STND 11-0843-00095. Dr. Fancher's statement in this regard carries no weight, because he had no authority to interpret the policy language. Elsewhere, Dr. Fancher's conclusions state that it would be "improbable . . . that the claimant would have developed a severe as hyponatremia as occurred without being substantially dehydrated going into the day of June 5, 2010." Docket No. 14, STND 11-0843-00094. Further, Dr. Fancher wrote that individuals "can certainly be still recovering from the effects of fluid losses for days after a gastroenteritis." Docket No. 14, STND 11-0843-00095. In his opinion regarding Mrs. Malenski's death, Dr. Fancher opined that it was more probable than not that Mrs. Malenski's "antecedent history of diarrhea was likely a significant contributor to the claimant's death" and he suspected that she was partly dehydrated on the day of the Relay for Life event prior to becoming exposed to sun and heat. Docket No. 14, STND 11-00843-00095.

Based on the foregoing discussion, the Court finds that Defendant's decision to deny benefits under Mrs. Malenski's AD&D policy to be supported by facts sufficient to counter Plaintiff's claim that it was arbitrary and capricious.

### III. Conclusion

In summary, the Court finds that Defendant Standard Insurance Company's decision regarding Plaintiff's claim for AD&D benefits was reasonable and was therefore not arbitrary and capricious. IT IS THEREFORE ORDERED AND ADJUDGED that Standard Insurance Company's decision and review denying the Plaintiff AD&D benefits is hereby AFFIRMED.

**DATED** this 17th day of October, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma